SPEER *v.* COLBERT.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 153.   Argued December 13, 14, 1905.—Decided January 2, 1906.

Institutions incorporated under special acts of Congress take their character from the act incorporating them and bequests to Georgetown College and other institutions in the District of Columbia under a will made within thirty days of the death of the testator held not void, under § 34 of the Maryland Bill of Rights, as the legatees are not sectarian institutions under any of the acts incorporating them.

There being no institution incorporated as Georgetown University separate from Georgetown College, and as it was evident that the testator intended not to leave the property to an unincorporated institution but to an

incorporated one, able to take the bequest, Georgetown College was entitled thereto.

The franchise of a corporation is not taken away or surrendered, nor is the corporation dissolved, by the mere failure to elect trustees.

It is within the powers of an institution intended for the instruction of youth in the liberal arts and sciences to take and use a fund for the cultivation of historical research.

The trusts in this will were not such as could be defeated by the death or resignation of the trustees although the will made it their duty to supervise the administration of the fund.

Courts will not hold a bequest void for uncertainty unless actually compelled to do so by the language used, and a bequest of a sum not to exceed a specified amount, if otherwise valid, will be taken to be a bequest of that amount.

It is not an illegal placing of discretion in trustees to empower them to establish a scholarship with a bequest not exceeding a specified sum in "some medical college preferably Georgetown University in the District."

ONE of the appellants, Mrs. Speer, on the fifth of March, 1901, filed this bill in her own behalf and by her husband and next friend, Emory Speer, in the Supreme Court of the District of Columbia to obtain a judicial construction of the will of her deceased brother, Ethelbert Carroll Morgan, who died, testate, on May 5, 1891, a resident of the District of Columbia. Answers to the bill were duly filed and the Supreme Court gave judgment construing the will, which, upon appeal to the Court of Appeals of the District of Columbia, was reversed, and judgment was entered, construing the will, by the Court of Appeals. From that judgment Mrs. Speer, together with some of the parties defendant in the suit, appealed, and brought the case here for review.

The will in question was executed on the twenty-second day of April, 1891, and the testator died May 5, 1891. He was never married, and left as his next of kin and heirs at law two brothers and three sisters, viz: James D. and Cecil Morgan, and Mrs. Speer, the plaintiff in this suit, and Mrs. Anna M. Mosher and Mrs. Ada M. Hill. He appointed William J. Stephenson and John H. Magruder the executors and trustees of his will, the former of whom subsequently died and the

latter resigned, and Michael J. Colbert and James Mosher were duly appointed by the court as substituted trustees under the will. The estate of the testator was treated by him in his will as consisting of two parts, that which he had himself accumulated and that which came to him through the will of his father, who died in June, 1889. His own accumulations amounted to a little over twenty-three thousand dollars, while the estate which he received from his father somewhat exceeded fifty-five thousand dollars, the total being a trifle over seventy-eight thousand dollars. The estate of the deceased had been received by the substituted trustees, Colbert and Mosher, when this bill was filed by Mrs. Speer against them, and also against Mrs. Anna M. Mosher, the wife of James Mosher, and a sister of the testator, and also against the two corporations incorporated as St. Vincent's Orphan Asylum and as Trustees of St. Joseph's Male Orphan Asylum, both being in the District of Columbia, who were made parties because, as the plaintiff alleges in her bill, they claim to be the beneficiaries under the clauses of the will of the testator, leaving a legacy to be equally divided between St. Vincent's and St. Joseph's Catholic Orphan Asylums in the city of Washington, and in order that they might make proof of their identity, if any existed, with the St. Vincent, and also with the St. Joseph Catholic Orphan Asylums, mentioned in the will, and that they might be bound by the adjudication which might be made by the court in all respects hereafter; and also against John D. Whitney, James P. Fagan, Edward McTammany, James B. Becker and Edward I. Devitt, who, the plaintiff alleged, claimed to be, by succession, the President and Directors of Georgetown College, and who, as such, claimed an interest in the estate of the testator, under the clauses of his will mentioning Georgetown University, in the District of Columbia, and the plaintiff alleged that they were made defendants in order that they might make proof of succession to the original incorporators of Georgetown College; and that their claims to the legacy mentioned in the will might be

adjudicated by the court. The bill alleged that the will of the testator was duly admitted to probate in the proper court in the District of Columbia. After making certain provisions, not here material, the will of the testator is as follows:

"All the rest and residue of my estate real, personal and mixed of which I am now possessed or shall possess at my death (other than my share under my father's will of which I would become possessed at my mother's death) I give bequeath and devise to my trustees hereinafter named and their heirs and assigns with full power to sell convey mortgage and reinvest, in trust nevertheless to apply the income and profits to the use and benefit of my sisters Eleanora Speer wife of Emory Speer and Minnie Mosher wife of James Mosher in equal parts during their lives and at their death to deliver and convey each sister's share to her issue and if either sister die without issue living at her death, to deliver and convey said part to the survivor or her issue if any survive her.

"And if my said two sisters shall both die leaving no issue living at their deaths I direct my said trustees to deliver and convey all the said rest and remainder of my estate (excepting my share aforesaid under my father's will) to Georgetown University in the District of Columbia to be an endowment in equal shares of the literary and medical departments thereof."

\* \* \* \* \* \* \* \*

"And I hereby give bequeath and devise any and all the estate real personal and mixed devised to me under my father's will and to which I become entitled to have and possess upon my mother's death to my trustees hereinafter named their heirs and assigns forever with full power to sell convey mortgage encumber and reinvest in trust nevertheless to pay and see to the application of

"First the sum of ten thousand ($10000) dollars to Georgetown University in the District of Columbia to be used and held as an endowment for the prosecution of research in the colonial history of Maryland and the territory now embraced in the District of Columbia and obtaining and preserving

archives and papers having relation thereto, and known as the James Ethelbert Morgan fund.

"Second a sum not to exceed five thousand ($5000) dollars to be applied and expended under the personal supervision of my trustees to the purchase and erection of a chime of bells and either a side altar or memorial window or a bell and either a side altar or a memorial window for some one Catholic church . . . said church to be in the District and to—designated by my mother by her last will or otherwise and if she fail so to do I direct my trustees to carry out this trust as a memorial of my mother Nora Morgan and donate the same to some Catholic church . . . giving a preference, if there be one, built by the Jesuits. And in event this clause & gift be void I direct said sum not exceeding $5000 five thousand dollars shall be equally divided between Saint Vincent's and St. Joseph's Catholic orphan asylums in the city of Washington.

"Third. A sufficient sum not to exceed three thousand dollars the income to be applied to maintain a scholarship in the study of medicine preferably in Georgetown University; otherwise in some medical college in the District, to be known as the E. Carroll Morgan scholarship.

"Fourth, the sum of five thousand ($5000) dollars to form a fund known as the E. Carroll Morgan fund or scholarship to be applied as I may hereafter verbally indicate to my trustees or if I fail, as my trustees with the advice of proper persons may decide to the maintenance of a scientific department, or the foundation and the application of the income to a scholarship in the classical department, in the University of Georgetown in the District of Columbia. That the qualifications under both or either of the two last clauses of this will shall be that the applicant be born in the District of Columbia and at the time or within a year a student in a Catholic or a public school of the District of Columbia and most excellent in a competitive examination conducted by the faculty of the University of Georgetown.

"And lastly as to all the rest and residue of my aforesaid

share of my father's estate my said trustees their heirs and assigns shall hold the same for the benefit of my aforesaid sisters Eleanora and Minnie upon the same limitations conditions remainders and powers and in the same manner as the trustees under my father's will, will then hold retain and possess the 'remainder' and bulk of the respective shares of my said two sisters I wish my brother Cecil to have my share of my father's library I nominate and appoint William J. Stephenson and John H. Magruder my executors and trustees of this my last will and testament.

"In witness whereof I have signed and sealed and published and declared this as my will this 22nd day of April, 1891."

The plaintiff alleged that the bequest and devise to Georgetown University, upon the death of the two sisters, without issue living at the time of their death, were void, because, as alleged, there was no such incorporated institution in the District of Columbia as Georgetown University, capable of taking the bequest and devise, and also upon the ground that, assuming there was a simple misnomer, and that Georgetown College was meant instead of Georgetown University, yet, even upon that assumption, Georgetown College was incapable of taking the devise and bequest, because it was under the supervision and control of the Order of Jesuits, and that the college was therefore a sectarian institution. It was also averred that the bequest of $10,000 to Georgetown University in the District of Columbia, to be used and held as an endowment for the prosecution of research in the colonial history of Maryland and the territory now embraced in the District of Columbia, "was void, upon the same ground, and also because there was no charter power or authority in Georgetown College (assuming that institution to be meant) to receive the bequest." Also that the bequest of a sum not to exceed the amount of $5,000, to be applied and expended under the personal supervision of the trustees, for the purchase and erection of a chime of bells, etc., was void, as was also the alternative bequest of an amount not to exceed that sum for

the benefit of the two Catholic orphan asylums, in the city of Washington, the alternative bequest being void on the ground that those asylums were under the charge 'and control of persons belonging to religious orders, and therefore incapable of taking the bequest, and on the further ground that the amount of the bequest was uncertain. The bill averred also that the remaining bequest, of a sum not to exceed $3,000, and also the bequest of $5,000, for the purpose of maintaining and founding scholarships, etc., were void, because of their uncertainty and the want of clearly defined conditions under which the funds should be applied. The defendants answered the bill and none of them conceded the validity of the claims made therein. Colbert, one of the substituted trustees, and also John D. Whitney and others, for and on behalf of the president and directors of Georgetown College, and also the trustees of St. Joseph's Male Orphan Asylum and of St. Vincent's Orphan Asylum, all claimed the, validity of the bequests contained in the will, while the answer of Mosher, the other substituted trustee, simply expressed his willingness that the provisions of the will of the testator should be given effect and carried out, only so far as they were legal and valid.

On the trial, proof was taken in regard to the name and corporate status of Georgetown College, claiming the devises and bequests made to and on behalf of Georgetown University.

The Supreme Court, in an elaborate opinion (reported in 31 Washington Law Reporter, 630, 646), held that the devises and bequests to trustees named in the will, of the testator's estate, exclusive of that which came to him under the will of his father, were valid and effectual. The court also held that all the clauses and subclauses in the will of the testator, disposing of property acquired by the testator under his father's will, were void, and that the property therein spoken of became part of the residuum of the estate of the testator, and vested in the beneficiaries entitled to take under the residuary clause of the will. The Court of Appeals, upon re-

view of this judgment, held that the clauses of the will were valid, except the bequest of "a sum not to exceed five thousand dollars," to be expended under the personal supervision of the trustees in the purchase and erection of a chime of bells, and the erection of an altar or memorial window, etc.; but the alternative bequest of the sum not to exceed five thousand dollars, to be equally divided between St. Vincent and St. Joseph's Orphan Asylums in the city of Washington, was good. It also held that the clause in the will, providing for the application of five thousand dollars to form a fund to be known as the E. Carroll Morgan fund or scholarship, to be applied as "I [the testator] may hereafter verbally indicate to my trustees or if I fail, as my trustees with the advice of proper persons may decide, to the maintenance of a scientific department, or the foundation and the application of the income to a scholarship in the classical department in the University of Georgetown in the District of Columbia," was void. No appeal has been taken from this last portion of the judgment of the Court of Appeals.

*Mr. Marion Erwin* for appellant Speer; *Mr. Joseph R. Lamar* and *Mr. Conway Robinson* for appellants Mosher:

The history of Georgetown University shows that it is a corporation of Roman Catholic clergymen. See Maryland laws, act Nov. 1792, ch. 55; 2 Kilby's Laws; act of 1797, ch. 40; act of 1805–6, ch. 118; act of 1808, ch. 37; act of Congress, March 1, 1815, ch. 70, 6 Stat. 152; March 2, 1833, 6 Stat. 538; Papal Decree, March 30, 1833. For definitions of University, see 27 Am. & Eng. Ency. Law, 682, and Black's Law Dict.; see also, act Congress, June 10, 1844, 6 Stat. 912, and the charter of 1886 in the District of Columbia of the Medical School.

A gift to Georgetown University is a gift for a religious order and denomination within the meaning of the Bill of Rights. The acts of Congress simply conferred a new name on the existing corporation. 7 Am. & Eng. Ency. Law, 2d ed., 685; 1 Thompson, § 512; *Bosshor* v. *Dressel*, 34 Maryland, 503; *People* v. *Perrin*,

56 California, 345; nor did they repeal the old charter. *Snook* v. *Improvement Co.*, 83 Georgia, 66; *Regents* v. *University*, 9 G. & J. (Md.) 365. The testator by using the word college meant to refer to the old institution as known by that name. Even if the bequest was to the Medical Department it was a gift to a religious institution, if not to the University it was to a college without a charter and not empowered to receive it. *People* v. *Gunn*, 96 N. Y. 317. As to what is and is not a gift to a charity, see *Stratton* v. *Institute*, 148 Massachusetts, 505; *Goodell* v. *Association*, 29 N. J. Eq. 32; 2 Pomeroy Eq. Jur. 1019; *Church* v. *Smith*, 56 Maryland, 397; 2 Perry on Trusts, § 711; *James* v. *Allen*, 3 Mer. 17; *Norris* v. *Thompson*, 19 N. J. Eq. 311; *Morice* v. *Bishop*, 9 Ves. 399; *S. C.*, 10 Ves. 522; *Atty. Genl.* v. *Haberdashers*, 1 Myl. & K. 428; *Easterbrook* v. *Tillinghast*, 5 Gray (Mass.), 17; *People* v. *Powers*, 147 N. Y. 104.

As to the scope and effect of § 34 of the Bill of Rights, see *Trustees* v. *Manning*, 19 Atl. Rep. (Md.) 603; act of Congress of 1866, § 457, Rev. Stat. Dist. Col.; and as to the construction of similar statutes see Endlich, § 111; *Doe* v. *Waterton*, 3 B. & A. 151; *Price* v. *Maxwell*, 28 Pa. St. 33. Courts will go behind the cloak of a charter and ascertain the actual facts as to whether the institution is or was a religious one. *Stile* v. *Halleck*, 6 Nevada, 373; *Coats* v. *Campbell*, 37 Minnesota, 501; *Cook* v. *Industrial School*, 125 Illinois, 541; *Boyer* v. *Christian*, 69 Missouri, 492. The stated use of the Bible as a text-book is sectarian instruction. *State* v. *District Board*, 7 L. R. A. (Wis.) 330.

The bequest of $10,000 for endowing the James Ethelbert Morgan fund for prosecution and research in colonial history is void. It is not within the powers of the University to accept it—the object is not within the limits of "liberal arts and sciences." There is no beneficiary who can claim it or compel an account. *Kelly* v. *Nichols*, 19 L. R. A. 413; *Craig* v. *Lill*, 7 Cent. Rep. 659; *Goodell* v. *Union Ass'n*, 29 N. J. Eq. 52; *Gloucester* v. *Woods*, 3 Hare, 131, 136; *Atty. Genl.* v. *Oxford*, 1 Bro. ch. 444 note; *Anonymous*, 2 Freem. 261; *Atty. Genl.* v. *Whitely*,

11 Ves. Jr. 251; *Cherry* v. *Mott*, 1 Myl. & C. 123; *Clark* v. *Taylor*, 1 Drew, 642; *Carter* v. *Balfour*, 19 Alabama, 814; *Russell* v. *Kellett*, 2 Smale & G. 264; *Sinnett* v. *Herbert*, L. R. 7 Ch. 232; *Re White's Trust*, 55 L. J. Ch. N. S. 731; *Lechmere* v. *Centler*, 24 L. J. Ch. N. S. 647.

Even though the money is directed to be paid over to Georgetown University, and if that be considered as a charitable institution (which it is not), still if the purpose to which it is to be applied is not charitable within the meaning of the rule, and that purpose fails for want of a designated beneficiary capable of applying to a court of equity to enforce the trust the bequest must fail. *Cloyne* v. *Young*, 2 Ves. Sr. 91; *Robinson* v. *Waddelow*, 8 Sim. 134; *Knight* v. *Knight*, 3 Beav. 148, 174; *Williams* v. *Kershaw*, 5 Clark & F. 111; *Kendall* v. *Granger*, 5 Beav. 300; *Nichols* v. *Allen*, 130 Massachusetts, 211, 218; *M. E. Church Ex.* v. *Smith*, 56 Maryland, 362; *Grimes* v. *Harmon*, 35 Maryland, 221, 226; *Heiss* v. *Murphey*, 40 Wisconsin, 276; *Goddard* v. *Pomeroy*, 36 Barb. 548, 555; *Gumble* v. *Pfluger*, 62 How. Pr. 118; *Baptist Assn.* v. *Hart*, 4 Wheat. 1.

The rule has been modified only to the extent that gifts strictly to charitable uses are to a certain extent excepted from its operations. *Ould* v. *Washington Hospital*, 95 U. S. 303; *Russell* v. *Allen*, 107 U. S. 163; *Jones* v. *Habersham*, 107 U. S. 174; and see 2 Perry on Trusts, §§ 709, 713; *Brown* v. *Yeal*, 7 Ves. Jr. 50, note; *Briggs* v. *Hartley*, 19 L. J. Ch. N. S. 416.

As to other bequests being void and having lapsed for uncertainty, see *Bristol* v. *Bristol*, 53 Connecticut, 242; *Gambel* v. *Trippe*, 75 Maryland, 252; *Fountain* v. *Ravenal*, 17 How. 382; *Baker* v. *Fales*, 16 Massachusetts, 495.

Where the sum is uncertain or unnamed the bequest fails. 2 Perry on Trusts, § 714; *Ewen* v. *Bannerman*, 2 Dow & Ct. 74; *Flint* v. *Warren*, 15 Sim. 626; *Society* v. *F. C. Society*, 14 N. H. 315; *Russell* v. *Jackson*, 10 Hare, 204; *Coxe* v. *Bassett*, 3 Ves. 155; *Hartshorn* v. *Nichols*, 26 Beav. 58; *Mills* v. *Newberry*, 112 Illinois, 123; *Grant* v. *Colman*, 9 Ves. 323; 5 Am. & Eng. Ency. Law, 905; *Pritchard* v. *Thompson*, 95 N. Y. 76.

The alternate bequest to the two asylums is also void. Whenever a power is of a kind that indicates a personal confidence it must *prima facie* be understood to be confined to the individual to whom it is given, and will not except by express words pass to others to whom by legal transmission the same character may belong. *Cole* v. *Wade*, 16 Ves. Jr. 27; *Alexander* v. *Alexander*, 2 Ves. Sr. 643; *Powles* v. *Jordan*, 62 Maryland, 503; *Atty. General* v. *Berryman*, 1 Dickens, 168; *Fontain* v. *Ravenal*, 17 How. 369, 382.

The charters of these two asylums are in evidence and show that they organized as private charitable and educational institutions, hence the bequests are void under § 34 of the Bill of Rights.

The legacy for scholarship is void because indefinite and the discretion reposed in the executors expired with the death of one and the resignation of the other. Cases *supra*. The death of trustees given by will power to select the beneficiary of a charitable bequest from several uncertain classes defeats the bequest if valid in the first instance. Cases *supra*.

This is a lapsed legacy, and being of money falls into the residuary clause of the will. 1 Perry on Trusts, sec. (*a*); *Dawson* v. *Clarke*, 15 Ves. 417; *Brown* v. *Higgs*, 4 Ves. 708; *S. C.*, 8 Ves. 570; *Shanley* v. *Baker*, 4 Ves. 732; *O'Keys* v. *Heath*, 1 Ves. 141b; *Cambridge* v. *Rous*, 8 Ves. 25; *Cooke* v. *Stationers Co.*, 3 M. & K. 264; *Bland* v. *Bland*, 2 Z. & W. 406; *Jones* v. *Mitchell*, 1 S. & S. 298; *Leake* v. *Robinson*, 2 Mer. 392.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for appellee.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The opinion of the Court of Appeals, in this case, delivered by Chief Justice Alvey (24 App. D. C. 187), is entirely satisfactory to us, and leaves little to be said in addition. For

the purpose, however, of simply stating the opinion of this court upon the various questions, without discussing them at length, we add what follows.

The appellants insist that the gift of the property to the Georgetown University is void, as having been made to a sectarian institution less than one calendar month prior to the testator's death, and that such disposition was therefore in violation of section 457 of the Revised Statutes of the District of Columbia. That section makes valid and effectual all sales, gifts and devises prohibited by the thirty-fourth section of the Declaration of Rights of the State of Maryland, adopted in 1776, "provided, that in case of gifts and devises, the same shall be made at least one calendar month before the death of the donor or testator." 14 Stat. 232; passed July 25, 1866. The thirty-fourth section of the Maryland Bill of Rights makes void:

"Every gift, sale or devise of lands to any minister, public teacher or preacher of the gospel as such, or to any religious sect, order or denomination, or to or for the support, use or benefit of or in trust for any minister, public teacher or preacher of the gospel as such, or any religious sect, order or denomination; every gift or sale of goods or chattels to go in succession or take place after the death of the seller or donor, to or for such support, use or benefit, and also every devise of goods or chattels to or for support, use or benefit of any minister, public teacher or preacher of the gospel as such, or any religious sect, order or denomination, without leave of the legislature."

It is also insisted that there is a misnomer of the corporation, now claiming the right to the bequest, inasmuch as such corporation was incorporated under the name of the "The President and Directors of Georgetown College," while the bequest is to "Georgetown University, in the District of Columbia." It is contended that Georgetown College is a corporation, incorporated on the tenth of June, 1844, under an act of Congress (6 Stat. 912, entitled "An act to incorporate Geor-

town College, in the District of Columbia"), and that there was and is another institution in Georgetown, sometimes called the University of Georgetown or Georgetown University, which was distinct from the college incorporated under the above-mentioned act of Congress, and not covered by it, and that the testator knew of this so-called university, that he was a professor therein, and that such university was, at the time of the testator's death, a sectarian institution within the thirty-fourth section of the Maryland Bill of Rights above mentioned. The fourth section of the above act expressly provides that no misnomer of the corporation shall defeat or annul any donation, etc., to the corporation. We agree with the Supreme Court and the Court of Appeals of the District of Columbia in the opinion that there was not, at the time of the execution of his will by the testator, or at the time of his death, any incorporated institution existing as Georgetown University or University of Georgetown, separate and apart from, or having powers other than, those granted to "The President and Directors of Georgetown College," by the act of Congress of 1844, above cited. It appears in the evidence that this college was frequently spoken of as Georgetown University, and known as such, but the evidence entirely fails to show that there were two incorporated institutions, the one, "Georgetown University," and the other "The President and Directors of Georgetown College." And we have no doubt that the testator meant the corporation called Georgetown College when he used in his will the word university. He meant to give the property to a corporation, and to one that could take it, and the evidence shows there was no other corporation of that kind. Upon this question the Court of Appeals said: "It was expressly alleged in the bill as a fact that there is no such incorporated institution as Georgetown University, though Georgetown College is frequently referred to and spoken of as Georgetown University, notwithstanding it has never been incorporated as such. It is simply a popular designation applied to the college. It is alleged in the bill

that the defendants Whitney and others, under the name of
president and ·directors of Georgetown College, in this Dis-
trict, claim to be the beneficiaries entitled to the legacies
mentioned in the will of the testator as for Georgetown Uni-
versity.   It is not attempted to be shown that there was, or
is, in this District any such incorporated institution of learning
as "Georgetown University," separate from and independent
of "Georgetown College."   It was not to any unincorporated
so-called institution that the testator intended to leave the
property, but to one that was incorporated and capable of ·
taking a legacy.

Various acts of the legislature of Maryland were referred
to on the argument, particularly the act of 1792, chapter 55;
that of 1797, chapter 40; the act of 1805, chapter 118; that of
1808, chapter 37; also. the act of Congress of March 1, 1815,
chapter 70, 6 Stat. 152, entitled "An act concerning the College ·
of Georgetown, in the District of Columbia"; also that of
March 2, 1833, 6 Stat. 538, in which the Government grants
certain lots in Washington city to the college above referred.
to.   These various statutes were cited for the purpose of show- ·
ing the validity of the claim that an institution called George-
town University, as distinct from Georgetown College, was
meant in the will of the testator.   In regard to these particular ·
acts we think thay do not bear upon the case other than, as
remarked by the Court of Appeals, to show the origin and
growth of Georgetown College, and to identify the early
foundation of the school with the president and directors of
Georgetown College, as that institution was fully and com-
pletely incorporated by the above-cited act of Congress of ·.
March 10, 1844.   That act must be resorted to as the measure
of the powers and duties, as well as to define the character,
of the corporation created thereby.   *Bradfield* v. *Roberts,* 175
U. S. 291.

Taking the character of the college from the act of Congress,
we are of opinion that it is not a sectarian institution or within
section 34 of the Maryland Bill of Rights.   The reasoning upon

this subject (as well as that upon the alleged misnomer of the college) set forth in the opinion of the Supreme Court (31 Washington Law Reporter, 630), and in that of the Court of Appeals, is entirely satisfactory, and we concur therein.

There is, in our judgment, no merit in the contention that the persons claiming as president and directors of the college are not the legal successors of the original incorporation. There is no evidence that the same has been dissolved. The franchise of a corporation is not taken away or surrendered, nor is the corporation dissolved by the mere failure to elect trustees. We do not think that in this case there was any failure to elect, nor was there any dissolution.

We now come to the consideration of the validity of the disposition made of the testator's property, which came to him from the will of his father. The testator gives and bequeaths all of that property to his trustees, thereafter named, in the will, and their heirs and assigns forever, "with full power to sell, convey, mortgage, incumber and reinvest, in trust nevertheless to pay and see to the application of: First, the sum of ($10,000) ten thousand dollars to Georgetown University in the District of Columbia, to be used and held as an endowment, for the prosecution of research in the colonial history of Maryland and the territory now embraced in the District of Columbia, and obtaining and preserving archives and papers having relation thereto, 'and known as the James Ethelbert Morgan fund.'"

Aside from the objections to the bequest to Georgetown University already considered, a further objection is made, and the disposition is alleged to be void, because there is no charter power in any institution which could take under this bequest that authorizes it to prosecute such research and obtain and preserve the archives relating thereto. It is well said, in the opinion of the Court of Appeals in this case, that the act of incorporation of Georgetown College in 1844 confers "corporate power upon the institution for the instruction of youth in the liberal arts and sciences, and also clothes the corporation

with power to take any estate whatsoever, in any lands, etc., or goods, chattels, moneys and other effects, by gift, bequest, devise, etc., and the same to grant, convey or assign, and to place out on interest for the use of said college and to apply the same. The cultivation of historical research would seem to be a part of a liberal education, such as should be encouraged by a college intended to confer degrees upon students in acquiring a liberal education in the arts and sciences." In *Jones* v. *Habersham*, 107 U. S. 174, 189, it is said that "A corporation may hold and execute a trust for charitable objects in accord with or tending to promote the purposes of its creation, although such as it might not by its charter or by general laws, have authority itself to establish or to spend its corporate funds for. A city, for instance, may take a devise in trust to maintain a college, an orphan school or an asylum."

Although it is, under the will, the duty of the trustees therein named to exercise supervision over the administration of the fund, nevertheless the death or resignation of the trustees named in the will cannot, and does not, defeat the bequest. There is not such a personal trust as renders it necessary to have the personal action of the trustee named in the will, and the trust does not fail upon the death or resignation of the named trustee. The court may appoint his successor. *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet. 99, etc.

Both courts below have held that the bequest of a sum not to exceed five thousand dollars, to be expended under the personal supervision of the trustees in the purchase and erection of a chime of bells, etc., to be void. We agree with those courts in that respect. We also agree with the views of the Court of Appeals, holding that the alternative bequest of this same sum, not to exceed five thousand dollars, to be divided equally between the two orphan asylums, is valid. There is no material misnomer in either case, although they are incorporated institutions, one by the name of St. Vincent's Orphan Asylum and the other as St. Joseph's Male Orphan Asylum in the city of Washington, and they are referred to in

the will simply as St. Vincent's Orphan Asylum and St. Joseph's Catholic Orphan Asylum.

Nor does the bequest violate the thirty-fourth section of the Maryland Bill of Rights, already referred to. The same reasoning on that point governs this bequest as is applicable to the bequest to the University of Georgetown. Neither of these orphan asylums is a sectarian institution under the acts of incorporation. The other objection made is that the clause directs that a sum, not exceeding five thousand dollars, shall be equally divided between these orphan asylums; and it is said that there is such uncertainty in the amount of the bequest as to render it impossible to execute it, that it might be ulfilled by dividing a dollar between the asylums, or any other sum, within the five thousand dollars named in the bequest. But it seems to us that the intention of the testator is clear to give the full sum of, but not to exceed, five thousand dollars. That is, he gives five thousand dollars to be equally divided between these two asylums. While the amount is not to exceed five thousand dollars, the direction for an equal division, taken in connection with the other facts, render it in our opinion clear that the intention of the testator was that that sum should be the amount of the bequest. Courts are always reluctant to hold a bequest void for uncertainty, and they only do it when actually compelled to do so by the language used. *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet. *supra*. If the testator had really intended that any less sum than five thousand dollars should be disposed of by and equally divided under this clause in his will, he would have said so.

Objection is also made to the bequest of "a sufficient sum, not to exceed three thousand ($3,000) dollars, the income to be applied to maintain a scholarship in the study of medicine, preferably in Georgetown University; otherwise in some medical college in the District, to be known as the E. Carroll Morgan scholarship." The first objection, as to the uncertainty of the amount of the bequest, we do not regard as meritorious.

It is a sum sufficient to found a scholarship, and it shall not exceed, in any event, $3,000. If one can be founded, within. the conditions named in the will, for a less sum than $3,000, then that less sum only can be used. The discretion to be exercised by the trustees in selecting the college with which to connect the scholarship does not render the bequest void. The testator has, by this clause in his will, himself expressed his preference for Georgetown College, if the scholarship can be maintained in that institution, but if not, it is to be a scholarship in some medical college of the District. This, we think, is not an improper or uncertain disposition of the bequest, or an illegal placing of a discretion in the trustees under the will. See *Attorney General* v. *Gleg,* 1 Atk. 356; *Attorney General* v. *Fletcher,* 5 L. J. Eq. (N. S.) 75; 2 Perry on Trusts, 4th ed., § 721.

The last bequest objected to is that of five thousand dollars, to form a fund known as the E. Carroll Morgan fund or scholarship, to be applied as the testator might thereafter indicate to his trustees, etc. This has been declared void by both courts, and no appeal has been taken from the judgment of the Court of Appeals adjudging that item to be void. That bequest being adjudicated invalid, the fund provided for therein forms part of the residue of the testator's estate, and passes under the residuary clause of the will.

These views call for an affirmance of the judgment of the Court of Appeals, with costs to the several parties, to be paid· out of the residuary fund, as provided for by the judgment of that court.

*Affirmed.*