ESTATE of Sallye Lipscomb FRENCH.
John W. KEY et al., Appellants,

v.

Michael M. DOYLE et al., Appellees.

No. 9490.

District of Columbia Court of Appeals.

Argued Nov. 5, 1975.

Decided Nov. 1, 1976.

Floyd Willis, III, Rockville, Md., with whom Edith M. Gelfand, Rockville, Md., was on the brief, for appellants.

Michael M. Doyle, Washington, D.C., entered an appearance as executor pro se.

Charles H. Burton, Washington, D.C., with whom Robert J. Tyrrell, Washington, D.C., was on the brief, for appellee Calvary Baptist Church.

Nicholas D. Ward, Washington, D.C., with whom William A. Glasgow, Washington, D.C., was on the brief, for appellee St. Matthew's Cathedral.

Before YEAGLEY and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

MACK, Associate Judge:

This appeal involves a challenge to the constitutionality of D.C.Code 1973, § 18–302, which provides that any devise or bequest to a clergyman or religious organization is invalid if made within 30 days of the testator's death. The trial court determined that the statute violated the First and Fifth Amendments of the United States Constitution. We affirm.

The facts of this case are not in dispute. Sallye Lipscomb French executed a will on October 13, 1972, in which she left one-third of her residuary estate to appellee Calvary Baptist Church and one-third to appellee St. Matthew's Cathedral. She died on November 2, 1972, less than 30 days after the execution of the will. Mrs. French had executed two previous wills in 1960 and 1963 in which she had made several religious bequests to both Baptist and Catholic organizations. There is no evidence that appellees had made any attempts to influence her choice of legatees.

The executor of Mrs. French's estate, Michael M. Doyle, instituted this action seeking instructions on the proper distribution of the estate in light of D.C.Code 1973, § 18–302. The decedent's heirs at law and next of kin (appellants) [1] and the legatee churches (appellees), all parties to the action, filed cross-motions for summary judgment contesting the constitutionality of § 18–302. The trial court granted

1. Appellants are the decedent's brother and several of her nieces and nephews.

summary judgment in favor of appellees, holding that the statute violated both the due process clause of the Fifth Amendment and the free exercise clause of the First Amendment. Accordingly, the court ordered that Mrs. French's estate and all future probate cases in the District of Columbia be administered without regard to § 18–302.

Section 18–302, so-called "Mortmain statute," was enacted in 1866 and has remained substantially unchanged to the present time.[2] Specifically, it states that:

> A devise or bequest of real or personal property to a minister, priest, rabbi, public teacher, or preacher of the gospel, as such, or to a religious sect, order or denomination, or to or for the support, use, or benefit thereof, or in trust therefor, is not valid unless it is made at least 30 days before the death of the testator. [D.C.Code 1973, § 18–302.]

The purpose of the statute is to preclude "deathbed" gifts to clergymen and religious organizations by persons who might be unduly influenced by religious considerations. *See* Cong.Globe, 39th Cong., 1st Sess. 3970–71 (1866). Mortmain statutes in general are intended to protect a donor's family from disinheritance due to charitable gifts made either without proper deliberation or as a result of undue influence on the part of the beneficiaries. *See* G. G. Bogert & G. T. Bogert, the Law of Trusts

and Trustees § 326 (2d ed. 1964); 4 A. Scott, the Law of Trusts § 362.4 (2d ed. 1956).

Section 18–302, by its terms, declares void only bequests and devises for the benefit of religious institutions or the clergy. Testamentary gifts to non-religious charitable or educational organizations are not included.[3] Moreover, by judicial decision gifts to charitable, educational and artistic organizations, even though operated by religious institutions, have been held to be beyond the aegis of the statute. *See, e.g., Colbert v. Speer,* 24 App.D.C. 187 (1904), *aff'd,* 200 U.S. 130, 26 S.Ct. 201, 50 L.Ed. 403 (1906); *In re Estate of Susan Evelyn Murray,* Admin. No. 29831 (D.C. Supreme Ct. Dec. 26, 1924). For example, our courts have upheld gifts to such organizations as sectarian universities, *Colbert v. Speer, supra* (Georgetown University); orphanages run by religious orders, *Id.* (St. Vincent's Orphan Asylum, St. Joseph's Orphan Asylum); and religious groups or committees formed for charitable purposes, *In re Estate of Henry Kroger,* Admin. No. 1901–67 (D.D.C. May 6, 1968) (Salvation Army); *In re Estate of Mariette Little,* Admin. No. 34929 (D.C. Supreme Ct. Nov. 13, 1928) (Board of Relief of the Presbyterian Church); *In re Estate of Murray, supra* (Little Sisters of the Poor).[4]

Thus, in a series of cases involving § 18–302 and its predecessor sections, lega-

2. The statute had its genesis in the 34th Section of the Maryland Declaration of Rights which invalidated, among other things, substantially all devises and bequests to religious persons or organizations. *See Speer v. Colbert,* 200 U.S. 130, 141, 26 S.Ct. 201, 50 L.Ed. 403 (1906). This provision resembled the English Mortmain statutes which prohibited devises of land for religious or charitable uses. *See* 4 A. Scott, The Law of Trusts § 362.2 (2d ed. 1956). Section 34 was made applicable to the District of Columbia by the Organic Act of 1801, ch. 15, § 1, 2 Stat. 103. In 1866 it was amended to invalidate only devises and bequests to religious entities made within one month of death. Act of July 25, 1866, ch. 237, 14 Stat. 232.

3. Seven other jurisdictions have Mortmain statutes similar to § 18–302; however, only the District of Columbia statute restricts testamentary gifts solely to religious entities. The other state statutes restrict substantially all charitable gifts made within a certain period before death. *See* G. G. Bogert & G. T. Bogert, The Law of Trusts and Trustees § 326 (2d ed. 1964, Supp.1975).

4. *But see McInerney v. District of Columbia,* 122 U.S.App.D.C. 413, 355 F.2d 838 (1965) (gift to the Society of Perpetual Adoration, a semi-cloistered order of nuns, held invalid). In the instant case, a legacy to the Little Sisters of the Poor was found to be valid because the organization is not a religious institution within the meaning of § 18–302.

cies allegedly barred by the statute were held to be valid either because the legatee was characterized as a charitable rather than a religious organization or by invoking the doctrine of dependent relative revocation.[5] These cases demonstrate that the courts in this jurisdiction sought to avoid the impact of the statute whenever possible in an effort to effectuate the intent of the testator. Finally in 1972, the United States District Court for the District of Columbia, rather than engaging in "leger-de-main . . . to avoid the operation of the statute," held it to be unconstitutional on First Amendment grounds. See In re Small, 100 Wash.L.Rptr. 453 (D.D.C. Feb. 7, 1972).[6]

Because that decision is not binding in the instant case, the trial court re-examined § 18–302 and determined that it not only infringed on First Amendment rights, but it also established an arbitrary classification in violation of the due process clause of the Fifth Amendment. We agree that the statute is invalid under equal protection and due process principles and therefore find it unnecessary to consider the First Amendment issues.

Equal protection of the law is guaranteed in the District of Columbia by the due process provisions of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). See also Jimenez v. Weinberger, 417 U.S. 628, 637, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).[7] The equal protection guarantee "requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose." Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 172, 92 S.Ct. 1400, 1405, 31 L.Ed.2d

768 (1972). See also Frontiero v. Richardson, 411 U.S. 677, 683, 93 S.Ct. 1764, (1973). "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike'." Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). See also Stanton v. Stanton, 421 U.S. 7, 14, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Eisenstadt v. Baird, 405 U.S. 438, 447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). The statute in question creates two classes of beneficiaries: one class composed of clergymen and religious institutions and a second class encompassing all other beneficiaries. The issue, therefore, is whether this classification bears any rational relationship to the purpose of the statute.

The Supreme Court of Pennsylvania confronted the same issue with respect to the Pennsylvania Mortmain statute in In re Estate of Cavill, 459 Pa. 411, 329 A.2d 503 (1974). See also Riley v. Riley, 459 Pa. 428, 329 A.2d 511 (1974), cert. denied, 421 U.S. 971, 95 S.Ct. 1966, 44 L.Ed.2d 462 (1975). That statute invalidated all charitable gifts made within 30 days of the testator's death, unless those who would benefit by the invalidity agreed to the gift. The court held that the statute denied the charitable beneficiaries equal protection of the laws, stating:

> Clearly, the statutory classification bears only the most tenuous relation to the legislative purpose. The statute strikes down the charitable gifts of one

---

5. See Linkins v. Protestant Episcopal Cathedral Foundation, 87 U.S.App.D.C. 351, 187 F.2d 357 (1950). The doctrine of dependent relative revocation may be applicable only if the challenged bequest is set forth in an earlier will executed more than 30 days prior to the testator's death.

6. Probate jurisdiction was transferred from the United States District Court to the Su-

perior Court of the District of Columbia on August 1, 1973. D.C.Code 1973, § 11–501.

7. "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 670, 46 L.Ed. 2d 659 (1976), citing Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

in the best of health at the time of the execution of his will and regardless of age if he chances to die in an accident 29 days later. On the other hand, it leaves untouched the charitable bequests of another, aged and suffering from a terminal disease, who survives the execution of his will by 31 days. Such a combination of results can only be characterized as arbitrary.

Furthermore, while the legislative purpose is to protect the decedent's family, the statute nevertheless seeks to nullify bequests to charity even where, as here, the testator leaves no immediate family. . . . This protection of a nonexistent "family" defeats the testator's expressed intent without any relation to the purpose which is sought to be promoted, further demonstrating the irrationality of the statutory classification. [Footnote omitted.] [459 Pa. at 416, 329 A.2d at 505–06.]

We agree with the reasoning of the Pennsylvania court and find the District of Columbia Mortmain statute to be perhaps even more arbitrary than the Pennsylvania statute. The purpose of both statutes is to protect the family of a testator who was unduly influenced by religious considerations. Consequently, the Pennsylvania statute invalidated all charitable gifts made within 30 days of death. However, the District of Columbia statute, as interpreted by the courts, voids only religious devises or bequests and distinguishes further between gifts to religious institutions and gifts to charitable organizations owned and operated by religious institutions, making only the latter valid. There is no rational

basis for presuming that a testator troubled by religious considerations is likely to make a bequest directly to a church, rather than to a charity run by the church. Thus, the statute arbitrarily provides different treatment for similarly situated legatees.[8] *Cf. Reed v. Reed, supra* 404 U.S. at 77, 92 S.Ct. 251.

In addition, § 18–302 establishes an irrebuttable presumption that certain bequests to clergymen or religious organizations are the result of undue influence. Many persons who may be in an equal position to influence the testator, such as lawyers, doctors, nurses, and charitable organizations, are not included in the statute. *See In re Small, supra.* A gift to any of these persons is valid unless undue influence or lack of testamentary capacity is proved. There is no ground of difference that rationally explains the different treatment accorded religious entities. *Cf. Eisenstadt v. Baird, supra* 405 U.S. at 447, 92 S.Ct. 1029.

The statute is substantially over-inclusive in that it voids many intentional bequests by testators who were not impermissibly influenced or who do not have immediate family members in need of protection. It is also substantially under-inclusive in that it does not affect many charitable gifts made without proper deliberation, nor does it void legacies to persons who are in an equal position with religious persons to influence a testator. Consequently, we conclude that the classification established by § 18–302 has no rational relationship to the purpose of the legislation and hence denies religious legatees equal protection of the law.[9] *See In re Estate of Cavill, supra* at

---

**8.** We also note that although § 18–302 is intended to protect the testator's family, its provisions operate regardless of whether the testator has any family at all. In the event that there are no living heirs or next of kin, the devise or bequest would escheat to the District of Columbia.

**9.** The trial court determined that there is neither a compelling state interest nor rational

grounds justifying the statutory classification. Since we conclude that the discriminatory treatment cannot stand even under the "rational basis test," it is unnecessary to determine whether the classification affects fundamental rights which would require a showing of a compelling state interest. *See Labine v. Vincent,* 401 U.S. 532, 551 n. 19, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971) (dissenting opinion). *See also Jimenez v. Weinberger, supra,*

506. *Cf. Jimenez v. Weinberger, supra* 417 U.S. at 637, 94 S.Ct. 2496; *Eisenstadt v. Baird, supra* 405 U.S. at 454, 92 S.Ct. 1029.

Accordingly, the due process clause of the Fifth Amendment requires that the statute not be given effect in the administration of estates in the District of Columbia.

*Affirmed.*

REILLY, Chief Judge, Retired (concurring):

In joining in the holding that the challenged statute [1] denying validity to bequests for religious uses unless made at least 30 days before the death of the testator cannot be upheld under the Constitution, I agree with many of the observations made in the majority opinion. Nevertheless, I think that the decision should be rested on the ground that in enacting this particular statute, Congress did what it was forbidden to do by the text of the First Amendment providing that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."

This court, in contradistinction to some appellate tribunals, has been most reluctant to declare Acts of Congress unconstitutional in the absence of any controlling decision by the United States Supreme Court. Where we find it necessary to do so, it seems to me that whenever possible we should rely upon specific constitutional language more precise than the "due process" and "equal protection" clauses which lead inevitably to judicial consideration of such elusive concepts as rational legislative purpose, unreasonable classifications, and compelling state interests.[2]

The making of a will, of course, is not a constitutional right, *Irving Trust Co. v.*

*Day,* 314 U.S. 556, 62 S.Ct. 398, 86 L.Ed. 452 (1942), but one granted by legislative bodies. Accordingly, it has been widely recognized that states have the power to limit the rights of testators to make testamentary gifts which disinherit in whole or in part their next-of-kin—popularly referred to by probate courts as the natural objects of their bounty. Thus, statutes which insure spouses and dependent children a certain proportion of a testator's property are not unusual. Statutes designed to protect against undue influence, *e. g.,* the voiding of gifts to attesting witnesses, legal counsellors, etc., are also common even though they create an irrebuttable presumption of undue influence where, in fact, none may exist.

As Judge Mack has pointed out, the purpose of the statute here is not solely to protect the natural expectancies of the testator's family from being defeated by substantial testamentary dispositions in favor of strangers or institutions. Its real vulnerability is that it singles out bequests for religious uses in contrast to bequests for charitable, educational, artistic, or humane institutions. According to appellees, the statute's main purpose is to prevent advocates of traditional religions, particularly the clergy, from influencing the dying by holding out hopes of salvation or avoidance of damnation in return for generous gifts to further the practice of religion. But such an objective is precisely what the "free exercise" of religion clause of the First Amendment forbids, for it is premised upon the assumption that such representations are false and hence Congress can enact safeguards against their effect.

Thus, even though it could be proved (much less presumed) that agents of the two churches, whose legacies would be voided under the statute, secured these benefits by representations made to the tes-

---

1. 417 U.S. at 631–32, 94 S.Ct. 2496; *Eisenstadt v. Baird, supra,* 405 U.S. at 447 n. 7, 92 S.Ct. 1029.

1. D.C.Code 1973, § 18–302.

2. The Supreme Court of Pennsylvania fell into this morass in an opinion on a somewhat different mortmain statute, *In re Estate of Cavill,* 329 A.2d 503 (1974). *See* dissenting opinion of Pomeroy, J.

tatrix as death was imminent, the text of the First Amendment and judicial decisions construing it show that they had a constitutional right to make them. *See, e. g., Jones v. Opelika,* 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (invalidating license fee statutes as applied to vendors of religious books and tracts); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (striking down prohibition against unlicensed door-to-door solicitation of religious contributions), and *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L. Ed.2d 965 (1963) (general economic regulation not enforceable if it imposes even an indirect burden on certain religious practices). Accordingly, the statute infringes on rights which the legatees had standing to assert and therefore cannot stand under the First Amendment.