PHILO D. HART & OTHERS *v.* ISHAM WHITE.

*Wills. The construction of Wills.*

Where the testator, in his will, in devising a portion of his estate to his wife, made the bequest in the following words; " I give to my beloved wife one third of all " my personal and real estate, and in addition to that, I give her one cow, ten " sheep, and one hundred dollars in money, to have at her disposal during her " natural life, or so long as she shall remain my widow;" *it was held,*

I. That the two parts in this item in the testator's will, are distinct and each complete in itself.

II. That the first clause in ̪this item gives to the wife of the testator an estate in fee.

III. That the second clause does not influence or control the first, but the second clause being independent and distinct, it gives to the wife a life estate in the articles specified, in way ̤of addition to the first clause in the bequest, with power of sale.

The word *estate*, used in a will in ̧its application to real property, may be used to express either the quantity of interest devised, or to designate the thing devised, or both; and the sense in which it is used must be determined from the will itself.

THIS was an appeal by the plaintiffs from a decree of the probate court, denying the petition of the plaintiffs, praying for an order of division of the estate of Coolidge White, deceased, which was devised to Betsey White, his widow, deceased, for the term of her life, as the plaintiffs claimed, now terminated.

The will was as follows, to wit:

" I, Coolidge White, of Wallingford, in the county of Rutland, " and State of Vermont, being in a very infirm state of health, am " sensible of my liableness to sudden death, at the same time be-

" ing in my own apprehension of sound mind, do judge it best to
" make, and accordingly do make, hereby, this my last will and
" testament.

" It is my will that all my just debts, and the charges of my
" funeral be paid by my executor hereinafter named and appointed,
" out of my estate, as soon as conveniently may be after my decease,
" and I leave the charge of my funeral to the direction of my said
" executor. I give, devise, and dispose óf all my estate, real and
" personal, save what shall be necessary for the payment of my
" just debts and funeral charges, in the following manner :

" I give to my beloved wife, one third part of all my real and
" personal estate, and in addition to that, I give her one cow, ten
" sheep, and one hundred dollars in money, to have at her disposal
" during her natural life, or so long as she shall remain my widow ;
" and it is my will that the remainder of my property be divided
" among my children, in the following manner, that is as often as
" the males have three dollars, the females have two dollars, all to
" share alike in that proportion. I have given to my daughter,
" Almira Hart, and her heirs, real estate to the amount of three
" hundred dollars, which is to be deducted from her portion. The
" household furniture that my daughters, Almira Hart, Betsey
" Barnes, and Miranda Chilson have had, I also give them ; and I
" hereby appoint my son Isham White, sole executor of my last
" will and testament, hereby revoking all former wills by me made.
" In witness, &c."

The defendant pleaded six several pleas in bar. In the first
plea, the defendant set forth, that the whole estate, and the fee sim-
ple of the said estate so ´ devised to the said Betsey White, was
devised to the said Betsey and her heirs forever, and that the said
appellants have no interest, or estate therein under the said will.
The second plea sets forth the will at length, and the probate of
the same. The third plea refers to the will set forth in the second
plea, and sets forth that the said Betsey, while in full life, and be-
ing still unmarried, and the widow of the said Coolidge White, did
at Wallingford, on the 27th day of November, 1841, by her deed
of that date, executed in due form of law, remise, release and quit-
claim, unto the said Isham White, his heirs and assigns, the said
real estate, so devised and bequeathed to her by the said Coolidge,
&c. The fourth plea set forth that the said Isham, on the first

Hart et al. *v.* White.

Monday of June, 1846, having given due notice, rendered an account of his administration upon the estate of the said Coolidge, deceased, and that upon the application of the said appellants said Isham was ordered and decreed, by the probate court, to charge himself, with one third part of the personal estate, together with the real estate so bequeathed to the said Betsey; and that the said Isham appealed from the said order and decree to the county court, for the county of Rutland; that it was ordered by said court, at the April Term, 1847, with the consent of the parties, that said cause be referred to the Hon. Charles K. Williams, and that the parties duly appeared before said referee, on the 6th day of August, 1847; and that after hearing their respective proofs &c. the said referee decided, that the said Betsey acquired under the will of said Coolidge an absolute property in the one third, part of the personal property so bequeathed to her, and that the said Isham should not be charged with the same upon his accounting; that said referee made and returned his report accordingly to the county court, and the said court accepted the same, and that the said appellants filed exceptions to the said decision accepting said report, and removed said cause to the Supreme Court, in said county, and that said court affirmed the judgment of the county court, &c.

The fifth plea set forth, that said Isham was charged with the real estate upon the settlement of his administration account, as alleged in the fourth plea, by the order of the probate court, it being the same that had been purchased by the said Isham of the said Betsey, the said Betsey having deceased, that he appealed from said order to the county court, for the county of Rutland, and that said cause by the consent of the several parties was referred to Hon. Charles K. Williams; that the parties duly appeared before said referee; that said appellees, (the appellants in this suit,) claimed that said Isham should be charged with the rents of the said real estate, so devised to the said Betsey, the same having been occupied by the said Isham since her decease, and with the personal property so bequeathed to her &c., and that said referee decided and determined that said Betsey took, under the said will, an absolute and unqualified estate and property, in the said real estate and personal property, and made his report to the county court, and that said report was accepted by said court, and said appellees excepted to said decision of the county court, and the

said cause was removed to the Supreme Court, for said county of Rutland, and that said judgment and decision of the said county court was affirmed by the Supreme Court &c. The sixth plea set forth, that said appellants ought not to have an order for the division of said real estate &c., because said Isham says, that at a probate court holden for the District of Rutland, on the first Monday of June, 1846, due notice having been given &c., he rendered an account of his administering upon said estate, and it was ordered by said probate court, that he should be charged with certain moneys on said accounting, and that there was a balance due thereon from the said Isham; and that said Isham appealed from said order, to the county court, for the county of Rutland; that at the September Term, 1847, it was considered that a balance was due said Isham for the expenses of administering upon said estate, of $40,08, and that said appellees filed exceptions to the said decision of the county court, and said cause was removed to the Supreme Court for said county, and that the judgment and decision of the county court was affirmed by the Supreme Court; and that said judgment remains in full force, not vacated nor satisfied, and the same was certified to the said probate court, before the said order of division was applied for, to wit, on the 15th day of March, 1849, all which appears by the records &c.; and that there is not personal property of the said estate sufficient to pay the said balance, neither have the heirs of said estate, nor any one in their behalf, ever paid the same or indemnified the said Isham &c.

The appellants filed their replication to the first and sixth pleas of the defendant, and demurred to the defendants second, third and fourth pleas, and a replication by way of traverse to the defendant's fifth plea.

The defendant demurred to the appellants replications to the first and sixth pleas, and joined issue as to the appellants replication to the fifth plea.

On the hearing of the demurrers, at the September Term, 1853, of the county court,—Peck, J., presiding,—the court adjudged the replications to the first and sixth pleas sufficient, and the second, third and fourth pleas insufficient, and that the matters set forth in the sixth plea in connection with the matters appearing in the replication thereto are no bar to a judgment that partition be made, and to an order that certificate be granted to the effect that parti-

tion be made, on the appellants paying or securing by bond, under an order of the probate court; agreeable to the statute, whatever sum may be found due the executor from the estate, on or after the filing of such certificate in the probate court; such payment to be made or security given, on or after filing such certificate.

Exceptions by defendant.

On the trial at the same Term, upon the issue joined upon the fifth plea, the defendant offered in evidence a certified copy of the proceedings referred to in said plea, with the order of reference, the referee's report &c.

The defendant also offered parol testimony, for the purpose of showing that the parties referred to in said fifth plea, were the same as in the present proceedings, and that at the time of said reference, and at the hearing 'and trial before the referee, the parties had the same controversy then as now, respecting the right and interest that the said Betsey White took, to the real as well as the personal estate given to her, by the will of said Coolidge White &c.

The appellants conceded the identity of the parties in the two proceedings, but objected to the introduction of parol testimony for any other purpose, and claimed that the foregoing facts offered to be proved, should only be shown by the report of the referee.

The objection to the parol testimony was *pro forma* sustained, and said testimony excluded for any other purpose except to show the identity of the parties to the present suit, with those in the proceeding referred to in said fifth plea, and in the certified copies introduced, which identity was conceded, and thereupon a judgment was *pro forma* rendered for the appellants on said fifth plea. Exceptions by defendant.

Upon the whole case, the court rendered judgment that the appellants are entitled to the partition prayed for, upon their paying or securing by a bond, under an order of the probate court, agreeably to the statute, whatever sum is or may be found due the executor from the estate, and ordered that this judgment be certified to the probate court, unless the cause be taken to the Supreme Court upon the exceptions. The court also rendered judgment for the appellants to recover their costs.

Exceptions by defendant.

(It is not deemed necessary to report more explicitly the pleas in the case, as the cause was decided upon the construction of the will, and many of the questions raised by the pleadings and decided by the court below, were not passed upon by this court.)

*S. H. Hodges* and *H. Button* for defendant.

The will, upon a proper construction, vested the fee of the premises in Betsey White.

1. It will not be denied that the words of the first clause of the devise in question, are sufficient to carry a fee. This clause constitutes a perfect sentence in itself, having all the parts necessary. It is separated from the subsequent clause, and the words of qualification, upon which the appellants rely, by the conjunctive phrase, " in addition thereto," which emphatically marks the introduction of a new subject and a new action. The subsequent clause is also a perfect sentence, removing all pretext for connecting the two.— The absence of any words of limitation in the first clause, though striking to a professional ear, would not seem singular to a layman. We insist, in fine, that the laws of the English tongue, and the natural construction of the expressions here used, conspire in limiting the operation of the words of qualification in the second clause, to the property there designated. *Ellem* v. *Westley*, 4 B. & C. 667. *Areson* v. *Areson*. 5 Hill 410.

2. The words " at her disposal during her natural life," if applicable to this property, would also vest a fee in Mrs. White, there being nothing in the devise clearly indicative of a contrary intention. *Tomlinson* v. *Dighton*, 1 P. Wms. 149, and cases there cited. 1 Sugden on Powers 119. *Pearson* v. *Otway*, 2 Wils. 6.

3. It is idle to suppose that the testator contemplated a different disposition of his real and personal estate, or that he would leave his widow less than she could obtain by law, especially at her age and after their children were settled.

4. The statute (Comp. Stat. Chap. 48 § 3,) expressly requires, that in cases of doubt, such as the court has held this to be, the devise should be construed to convey a fee, 21 Vt. 250.

If the words " to be at her disposal," do not vest a fee, they confer a power, which has been well executed. *Tomlinson* v. *Dighton*, 1 P. Wms. 149, and cases there cited. *Sillare* v. *Robinson*, 3 U. S. D. 678. 1 Sugden on Powers 119, &c.

XXVI     18

*C. L. Williams* and *D. E. Nicholson* for appellants.

The issues raised upon the 1, 2 and 3 pleas present the question as to the construction. of that part of the will, which is in these words, " I give to my beloved wife one third part of all my real and personal estate, and in addition to that, I give her one cow, ten sheep, and one hundred dollars in money, to have at her disposal during her natural life, or as long as she remains my widow."

The real intention of the testator, in making the above devise is to govern in its construction, if that intention can be ascertained. REDFIELD, J. in *White* v. *White*, 21 Vt. 250. 4 Kent's Com. 596.

The testator obviously intended that his widow should have a life interest either in the whole, or in a part of the property devised. If only a part, which part? We say the real estate, and for the following reasons :

The real estate was the property of which the use merely would be the more beneficial to the widow; the property in which life estates are more usually given ; the property in reference to which there has never been any question but that a mere life estate in it might be given ; and the property in which the widow would by law have had a mere life estate, if no will had been made.

*A life estate merely in real estate* is ordinarily supposed to be conveyed, unless an intention to convey the fee is clearly expressed. REDFIELD, J. in *White* v. *White*, 21 Vt.

As to the construction to be given to the word " estate" see Preston on Estates, 146 as quoted in 4 Kent's Com. 7 Ed. 598.

The words " to have at her disposal," taken in the connection in which they stand, do not convey the fee. They were obviously designed as a part of the words of limitation to a mere limited estate. It cannot be supposed that the testator while limiting the enjoyment of the property devised, to the period of the devisee's widowhood, intended that in contemplation of another marriage, she might dispose absolutely of the devised property, and then have and enjoy the avails of the property, after another marriage, when that marriage would have terminated her right to the enjoyment of the original property itself.

Neither an enlarged and liberal interpretation, with regard to the probable intent of the testator, as gathered from the whole

Hart et al. *v.* White.

will, or a more strict and literal interpretation of the words "to have at her disposal," would give the widow more than the bare use and enjoyment of the property.

He has not given to her the right to sell and absolutely dispose of the property; but only the use of it, in the same way that the property of one person is placed at the disposal of another, when leased or loaned to him for a given time; and the word *disposal* was obviously used in the ordinary and often used sense.

The devise to the widow is all in one single and connected clause, and the limitation was obviously intended to the whole devise, as in *Finny* v. *Evartson*, 4 Maule & Sel. 58.

The opinion of the court was delivered by

BENNETT, J. It is claimed by the appellants, that under the will of her husband, the widow took, but a life estate, in that portion of the real estate devised to her; and that the heirs upon her decease, were entitled to the reversion; while on the other hand it is claimed, she took a fee. The clause in the will, under which the question arises, is thus expressed; "I give to my beloved wife one third of all my personal and real estate, *and in addition to that,* I give her one cow, ten sheep, and one hundred dollars in money, to have at her disposal during her natural life, or so long as she shall remain my widow." It is not claimed by the plain-- tiffs, but what the widow would have taken an estate in fee, had it not been for the concluding part in this item in the will, and we apprehend, the counsel were right in yielding so much.

The word *estate,* used in a will in its application to real proper- ty, may be used to express either the quantity of interest devised,, or to designate the thing devised, or both; and the sense in which it is used must be determined from the will itself. The rule laid down in the books, is, that though it refer to some particular lot of land, yet it will carry a fee, unless restrained by some other expression. 4 Kent's Com. 598, n. a. The question then is, is the operation of the word *estate* restrained by the closing para- graph in this item in the will. There may be some ambiguity, as to the meaning of the testator. We should carry out that inten- tion, if it can be done consistently with the rules of law; and in this case, the great inquiry is, what was his intention?

The *grammatical* construction of this item in the will is, I think,

somewhat obvious. The testator, first gives to his wife one third part of all his real and personal *estate ;* and then proceeds, and "*in addition to that,*" he gives her one cow, &c., to have at her disposal during her natural life, or so long as she shall remain his widow. It is apparent, that it was the intention of the testator to give the wife a life estate in the articles specified in the way of addition to the first clause in the bequest, with a power of sale. But we think, the natural construction is to confine the qualification or limitation to what is given to the widow, *by way of addition.* The two parts of this item in the will of the testator, are distinct and independent, and each complete in itself. He first gives his wife one third part of all his personal and real estate; and then increases that amount by adding to it a life estate in what is subsequently particularly specified.

It has been said by Judges, that the word *item* is a usual word in a will to introduce new and distinct matter, and that consequently a clause thus introduced is not to be influenced by, nor to influence a precedent or subsequent sentence, unless it be in itself imperfect and insensible, without such reference. *Hopewell* v. *Arkland,* 1 Talkeld 239. Much more clearly do the words, "and in addition to that," import the introduction of new and distinct matter from that, which had gone before, than what would have been done by the word *item.*

In the case of *Doe* v. *Wright,* 3 Term Rep. a devise was made to J. W. of all the lands of the testator in A.; and also to J. W. all the *estate* of the testator in B.; and it was held that only a life estate wrs given in the lands in A.; that is, that the word *estate* in the last clause, could not enlarge the operation of the word "lands" in the first clause, upon the ground that the two clauses were distinct and independent. The case cited in the argument from the 4 B. & C., is very like the case now at bar.

In the construction of a will, the grammatical one, if obvious should not be departed from, unless it would lead to absurdity, or unless there is enough in the will to satisfy the mind, that it was not the intention of the testator to have it construed according to its grammatical construction. In the present case there is nothing absurd or unreasonable in the idea, that the husband should wish to increase the widow's portion somewhat above one third of his estate, and there is nothing in any other portion of the will to

control or qualify the clause in question. Indeed, I think, the other parts of the will countenance the construction we give to that part of it now in question.

It can hardly be supposed, that the testator intended, that a portion of his property should be disposed of as intestate property; and if we were to hold that the wife took but a life estate in the lands, I rather apprehend such would be the ·effect, as to the reversion of the widow's portion.   Where he uses the expression, as to the remainder of my *property,* it may with propriety be considered as descriptive of, and designating the subject matter of the property given the children.

The words, " *and in addition to that,*" introduced new and distinct matter, and the qualification in the last member of the paragraph is not to influence what has gone before, which is perfect and sensible in itself.

The case of *Finny* v. *Evartson,* 4 M. & S. 58, cannot control this case.   In that, the court held that it was the intention of the testator to reserve to the close of the will the pointing out the kind of estate, he devised in each clause of the will, and this intention was inferred mainly from the numerical arrangement.   Though the case from the 4 M. & S. has an analogy to the case under consideration, yet it is not so identically the same as some which have been referred to upon the other side.

This construction of the will renders it unnecessary to decide any other questions arising under the pleadings.

The decision of the court below is reversed, and the decree of the court of Probate is affirmed.