TAYLOR *v.* COLUMBIAN UNIVERSITY (NOW KNOWN IN LAW AS GEORGE WASHINGTON UNIVERSITY).

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 41. Argued November 6, 1912.—Decided December 2, 1912.

A devise and bequest to a university to establish an endowment fund for free education of young men for preparation for entrance to the United States Naval Academy or to fit them to become mates or masters in the Merchant Marine Service of the United States, *held*

in this case to create a charitable trust that *is* capable of execution and one which is not void as too indefinite for execution.

Where testator names one institution to carry out a trust and names another as alternate in case the former shall not be able to perform, the court will not declare the trust impossible of execution on account of the failure of the first-named institution to carry it out until after the second named has also tried and failed.

Conclusions as to facts reached by two lower courts will not be disturbed by this court unless manifestly erroneous.

In establishing an educational endowment fund the words "Merchant Marine Service of the United States" have a definite meaning sufficient to sustain the trust.

25 App. D. C. 124, affirmed.

THE facts, which involve the construction and validity of a testamentary trust, are stated in the opinion.

*Mr. Henry E. Davis,* with whom *Mr. J. K. M. Norton* was on the brief, for appellants:

The devise does not create a charitable trust.

Admiral Powell made no gift for education. He made a gift for the Navy of the United States. It must be apparent that his purpose was not to aid any university, or any of its branches, nor to aid education; his sole purpose and object, as he expressly declared, was—"to make some contribution to the Navy of the United States."

The carrying out of the bequest in the way designated, cannot, in any way, help the Navy, which was the sole object of his bounty.

The Court of Appeals construed the bequest as a sort of educational trust, and so sustained it as a charity, citing as authority *Vidal* v. *Girard,* 2 How. 127; *Ould* v. *Washington Hospital,* 95 U. S. 303; *Spear* v. *Whitney,* 24 App. D. C. 187.

In each of these cases, however, the intent was to create a charity, and the thing created was a charity. The Powell bequest was nothing like these cases.

The court fell into the error of supposing that Admiral Powell intended to aid in education of some sort. If this

had been his purpose he would have created an endowment, the income therefrom to be used to give such free instruction as he might designate.

The bequest does not come under the broadest definition of charitable bequests. Words and Phrases, 1075.

If it does not appear from the instrument that the donor intended a general public charity, it will not be carried out at all, if, by reason of its uncertainty or otherwise, it cannot be so carried out as to accomplish the object specified by the donor. *Kain* v. *Gibboney*, 101 U. S. 362; *Stratton* v. *Physio-Med. College*, 149 Massachusetts, 505; and see Desty's note to this case, 5 L. R. A. 35; *People* v. *Powers*, 147 N. Y. 104.

In England, under the law of charitable uses, bequests for charity have been sustained; whilst benevolent gifts, without a designated beneficiary, have been held too indefinite, and therefore void. See *Norris* v. *Thompson*, 19 N. J. Eq. 307; Perry on Trusts, § 709; *In re Randell*, 38 Ch. D. 213 (Eng., 1888); *Re Prison Charities*, 16 Eq. 129 (Eng., 1873); Story on Eq. Jur., § 1182.

The devise in question, made for the definite purpose of helping the Navy or paying a debt to the marine profession, can in no way accomplish the sole purpose of the gift, and so must fail.

If the devise be held to be a charitable trust, it is yet too uncertain and indefinite to be carried out. Under the devise it is uncertain what young men are to partake of the benefit; no method nor plan for the selection of the beneficiaries is prescribed or provided.

There has never been a bequest that more absolutely or perfectly fulfilled all the conditions of a void bequest. *Norcross* v. *Murphy*, 44 N. J. Eq. 522; *Tilden* v. *Green*, 130 N. Y. 29.

If the charity is general and indefinite and no plan or scheme is prescribed, and no discretion is given to select the beneficiaries, it does not admit of judicial administra-

tion. The will should prescribe some mode of selection, or give some person discretionary power to select. *Fairfield* v. *Lawson*, 50 Connecticut, 501, 513; *Beardsley* v. *Bridgeport*, 53 Connecticut, 489; *Hughes* v. *Daly*, 49 Connecticut, 34; *White* v. *Fisk*, 22 Connecticut, 30, 53; *Grimes* v. *Harmon*, 35 Indiana, 198; *Church* v. *Mott*, 7 Paige, 77; *Goodell* v. *Union Asso.*, 29 N. J. Eq. 32.

In South Carolina the English doctrine of charities has been generally accepted, but there, as in England and in the other States of this country, where a particular charity has not been specified, but the charity is of a general nature, without the appointment of trustees to select the beneficiaries, the courts will not devise a scheme for carrying it out. *Atty. General* v. *Jolly*, 1 Rich. Eq. 99; *Gibson* v. *McCall*, 1 Rich. 174.

In Tennessee charitable bequests are upheld quite broadly. *Green* v. *Allen*, 5 Humph. 204; *State* v. *Smith*, 16 Lea, 662; *State* v. *Ellison*, 4 Baxt. 99; 2 Cold. 80; 1 Swan. 360; 7 Heisk. 694.

But the Supreme Court of that State has held that the beneficiary of the trust, or the class that is to take, must be designated by the testator, so that some one or class will have the right to compel the enforcement. *Johnson* v. *Johnson*, 92 Tennessee, 571.

In Maryland the principle is clearly recognized and firmly established, that a trust, to be upheld, must be of such a nature that the *cestuis que trust* are defined and are capable of enforcing its execution by proceedings in a court of chancery. *Maught, Exr.,* v. *Getzendanner*, 65 Maryland, 529, 533; *S. C.*, 72 Maryland, 67; *M. E. Church* v. *Smith*, 56 Maryland, 362; *Dashiell* v. *Atty. Genl.*, 5 Harris and Johnson, 392, and 6 H. and J. 1; *Yingling* v. *Miller*, 77 Maryland, 104; *Rizer* v. *Perry*, 58 Maryland, 112; *Needles* v. *Martin*, 33 Maryland, 609; *Wheeler* v. *Smith*, 9 How. 55; *Trinity M. E. Church* v. *Baker*, 91 Maryland, 539 (decided June, 1900); and see

*Pratt* v. *Sheppard,* 88 Maryland, 610, which reviews all the Maryland decisions above cited, and *Gambell* v. *Trippe,* 75 Maryland, 252; *Barnum* v. *Mayor of Baltimore,* 62 Maryland, 275, 292.

The Maryland decisions have been followed by the courts in the District of Columbia, and they expound the principles as held by our courts in all cases like the one at bar. *Long* v. *Gloyd,* 25 Wash. Law Rep. 50; *Coltman* v. *Moore,* 1 MacArthur, 197. The trustee has not been able to carry out the trust so as to accomplish the purpose of the testator.

*Mr. Walter C. Clephane* for appellees.

Mr. Justice McKenna delivered the opinion of the court.

Suit by appellants as heirs of Levin M. Powell to declare void a trust created by his will and to recover certain real estate held by the George Washington University, the legal successor of the Columbian University.

Levin M. Powell was, when he made his will, an admiral in the United States Navy on the retired list. The clause which creates the trust is as follows:

"Item: Fifth, it being my wish and desire to make some contribution to the Navy of the United States, of which I have been for so many years, I hope, a worthy member, and so in a measure to pay off the debt I feel I owe the honorable profession I have pursued through a long lifetime, and to that end to establish in the Columbian University in the District of Columbia, in a manner most conducive for that purpose, a means for the education of such young men as may be willing to profit therefrom in the branches of education best fitted to prepare them for officers of the line in the Navy of the United States, or for the places of mates or captains in the merchant marine

service of the United States. I do hereby give, devise, and bequeath to the said Columbian University and its successors all those certain pieces or parcels of ground situate and lying in said city of Washington, . . . in trust for the purposes following, and for no other purpose whatever—that is, in trust to create an endowment to be known as the Admiral Powell endowment, and with that view to take the said property, and the same to rent from year to year or to lease for a term of years as to the trustees and overseers of said university shall seem best; and the rents, issues, and profits arising therefrom, after first paying out of the same the taxes, insurance, repairs, and other expenses, to devote as far as the same will go, under such regulations as to the said trustees and overseers may seem best, to the free education of such young men as may desire to take advantage of the said endowment by way of their preparation for entrance into the Naval Academy at Annapolis, Maryland, or such as may fit them to become mates or masters in the merchant marine service of the United States, such preparation to be confined in the case of each young man so embracing the advantages of the said endowment to one year; and to include principally the studies following,—that is to say, arithmetic, geometry, trigonometry, and astronomy, with the use of astronomical instruments, the construction of charts, and the application of this knowledge to hydrographical survey by latitude and longitude, and if possible such study as will give to such young men a knowledge of scientific voyages of discovery, and other matters relating to war and commerce on the high seas; and it is further my desire that this endowment shall, if possible, embrace in its benefits such apprentices as, having filled their time in the great steam manufactory establishments of the country, may apply for appointment from civil life in the steam engineer department of the United States Navy, to such I would like to have a year's

education afforded under such regulations as the president and faculty of the university may think proper. And should it at any time for any reason be impossible to carry into effect the trusts, provisions, and conditions having relation to and herein imposed upon this bequest by me made for the creation of the endowment described on the part of the said Columbian University, or should it be made manifest at any time that the said trust is not being administered in accordance with my wishes and desires, and in conformity with the conditions specified, then and in such case it is my will and desire that the said endowment shall be placed in other hands, and to that end, and upon the happening of the contingency mentioned, I do hereby give, devise and bequeath the said property to the Johns Hopkins University of Baltimore, in the State of Maryland, and its successors, to be taken and held by the said university or the officers thereof proper for that purpose, upon the trusts and for the purposes hereinbefore particularly set forth in the bequest of said property to the Columbian University, in such manner that the purposes of the said endowment as by me indicated may be fully carried into effect."

The bill alleges that the Columbian University, supposing it had the right to execute the trust, took possession of the property and has let it to various tenants, and for more than sixteen years has issued a catalogue publishing its classes, the names of all of its students, instructors and officers, and the many and various schools of education it maintains, and that the catalogue is widely circulated throughout the United States. The University has, it is alleged, for a like period advertised "The Powell Scholarship," and notwithstanding the wide circulation of the advertisement the University has been unable to execute the trust.

It is alleged that the devise is so indefinite and the trust intended to be created so uncertain of its objects and sub-

jects that it is impossible of execution by the Columbian University, or by the Johns Hopkins University, and has in no wise been executed by either of them; and that therefore the trust is wholly void and of no effect. The collection of the rents and profits by the Columbian University is alleged. It was prayed that the trust be declared void and that the Columbian University be required to account for the rents and profits collected by it.

A demurrer to the bill was overruled, which ruling was sustained by the Court of Appeals. 25 App. D. C. 124.

The Court of Appeals held that the devise created a special charitable trust and that it was not void for uncertainty or incapacity of execution apparent upon its face. The court, however, held that the nineteenth paragraph of the bill, which alleged that the impossibility of the execution of the trust had been demonstrated, stated a cause of action and remanded the case for further proceedings. Upon the return of the case to the Supreme Court the University answered, by which it traversed the allegations of the bill and alleged in effect that it undertook the trust and has ever since efficiently executed it. It further alleged that its co-defendant, the Johns Hopkins University, is able, ready and willing to accept and administer the trust at any time if for any reason it should be impossible for it, the Columbian University, to administer the same, or "should fail to carry out the trust in that regard reposed in it."

Testimony was taken, and the trial court found from the facts proved the following:

"First. From the testimony adduced by plaintiffs upon this point, it appears that beginning with the scholastic year 1885-6 (the will of Powell was probated in 1885) the defendant Columbian University published in its annual catalogues that under the terms of the Admiral Powell Endowment free scholarships would be given to a limited

number of pupils who were preparing for admission to the United States Naval Academy at Annapolis. This notice was in some issues of the catalogue more explicit, giving in greater detail the terms of the trust, and in other issues courses of study were given from which the special course contemplated by the terms of the trust might be selected. It further appears from the records of the University that beginning with the scholastic year 1891–2 twenty-four young men actually took a course of study under the Powell Scholarships, in some cases the same man being permitted to pursue the course for more than one year. Of this number at least two entered the Naval Academy. I find nothing in the evidence showing the net income derived by the University from the trust property, but there is nothing to show that the full net income thereof was not applied to the administration of the trust. I am of the opinion that the evidence adduced is not sufficient to demonstrate the 'incapacity' of the execution of the trust."

Second. Granting that the testimony was sufficient to demonstrate the inability of the Columbian University to execute the trust, it did not appear that the Johns Hopkins University might not be able to do so, and that until it "has tried and failed the court would certainly not be justified in frustrating the intention of the testator by bestowing the property upon" the plaintiffs, "related so remotely to him."

The Court of Appeals practically affirmed these conclusions. The court said that while the testimony did not show that the expectations of the testator have been fully answered, and that it had failed "to show that the entire net proceeds of the trust property have been devoted exclusively to the purposes of the trust, and none other, it was sufficient to show that the trust can be executed, as well as that, in some measure, it is being executed." The court said further that it was unimportant to con-

sider defects of execution of the trust by the Columbian University as that possibility was contemplated by the testator and the Johns Hopkins University appointed as an alternate trustee, and as its ability to execute the trust was asserted and not denied "it must be taken as true." These conclusions, so far as they depend upon the testimony, not being manifestly erroneous we must accept, being the decisions of two courts.

The legal proposition, however, which determined the ruling upon the demurrer and the first decision of the Court of Appeals is open for consideration. That court, as we have seen, decided that the will created a special charitable trust and that the trust was not void for uncertainty or incapacity of execution apparent upon its face. These propositions are contested. It is contended, first, that the "object of the testator must be clearly charitable; and, second, the thing he directs to be done must, in its execution, accomplish the charitable object, in some degree at least." It is argued that these conditions are not fulfilled by the devise because, it is said, "the testator had no idea of assisting either of the universities named, or of assisting any one merely to get an education," and, further, that "his sole purpose, as he himself stated, was 'to make some contribution to the Navy of the United States.'"

The devise, we think, satisfies the tests. The object of the testator was not "to make some contribution to the Navy of the United States." Such contribution was but an incidental effect, or rather, the mere inducement to the testator's benefaction. The testator's special object was, so far as his property would accomplish it, to give to young men, not having the pecuniary ability to prepare themselves the opportunity to do so. Preparatory training was necessary; he made it available, to the extent of his means, to young men who otherwise could not bear the expense. And he knew the conditions of appointment,

in whom it rested and the contingencies upon which it
depended. If the field of candidacy was limited, he knew
that he was helping some to aspire and qualify to succeed.
The knowledge and help were definite. He certainly could
not designate the individuals. That could be done, and
necessarily was left to be done, by his trustees, one or the
other of them. The purpose of the testator has not been
disappointed. In other words, the charitable object has
been accomplished, "in some degree at least"—the test
which appellants apply. The finding is that at least two
out of twenty-four of those who availed themselves of the
scholarships instituted by the Columbian University en-
tered the Naval Academy. We can suppose a better result
from a better administration of the trust.

The testator had in view another career for young men
besides the Navy which could be attained by the same
means, that is, "the places of mates or captains in the
Merchant Marine Service of the United States." But it
is said that "there is no such thing" as the Merchant
Marine Service "known to the law" and that "therefore
the meaning of the testator in this behalf is left open to
ascertainment outside of the testator's language and the
provision of the will." The criticism is too exact. The
Merchant Marine was and is a very definite and substan-
tial thing and had unmistakable definition in general, if
not in legal, nomenclature. The meaning of a testator is
not required to be found in law lexicons; the usages of
popular speech may furnish a guide to it. Besides, the
words "Merchant Marine" receive certain meaning from
their context, and it is easy to put one's self in the place
of the sailor testator and appreciate his impulse and pur-
pose. His relatives were remote, his property not large,
and he had been an officer in the United States Navy.
He desired to assist others to become also officers in that
service or in a cognate service. He knew the equipment
necessary and he prescribed it. He chose proper educa-

tional instruments to confer the equipment and to select and qualify the candidates for the designated services. The purpose of the testator was worthy, and there is nothing in reason or authority which requires us to pronounce it legally insufficient.

*Decree affirmed.*