## WASHINGTON LOAN & TRUST CO. et al. v. HAMMOND et al.

(Court of Appeals of District of Columbia. Submitted January 5, 1922. Decided February 6, 1922.)

### No. 3552.

**1. Wills ⬤⟼470—Intention is to be ascertained from whole will.**

In construing a will, the intention of testatrix controls, as gathered from the whole will, and not from detached paragraphs or phrases.

**2. Wills ⬤⟼98—Gift of chattels to be disposed of under instructions not found is ineffective.**

A gift of household and personal belongings, with the understanding they shall be disposed of by the legatee in accordance with instructions left with the attorney of testatrix, is ineffective, where no instructions for the disposition were found.

**3. Wills ⬤⟼473—Bequest in "addition" to preceding is separate.**

Where a will gave a legatee a share in the income of a trust for her life, and, in the same paragraph, "in addition to the above," gave the same legatee personal property, to be distributed by her in accordance with instructions, which were not found, the provision for distribution did not apply to the gift of the income, since it could be applied to that gift only if the testatrix wished to change the gift, which was improbable, and since the words "in addition," introducing the second sentence, indicate that the two bequests were distinct; "addition" being defined as the act or process of adding or uniting, especially so that the parts remain independent of one another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Addition.]

**4. Wills ⬤⟼472—Subsequent paragraph held not to affect construction of previous bequest.**

Where one paragraph of the will gave a legatee a share of the income from a trust, and in addition certain personal belongings to be distributed in accordance with instructions of testatrix, a subsequent paragraph providing that, on the death of the legatee, her share in the net profits of the estate was to be paid to a home, does not indicate that the directions for distribution were intended to apply to the bequest of the share of the income, as well as to the personal belongings.

**5. Wills ⬤⟼439—Motive for clear bequest is immaterial.**

The court has no concern with the motives of testatrix in making a bequest, where testatrix has made her intentions clear with respect thereto.

**6. Wills ⬤⟼858(2)—Subject of ineffective bequest goes with residue.**

Under Code of Law, § 1631, providing that, unless a contrary intention appear, property comprised in any bequest which fails or is void shall be included in a residuary bequest, personal belongings of testatrix, which were bequeathed to a legatee, to be disposed of by her in accordance with instructions of testatrix which were never found, so that the legacy was ineffective, go to the residuary legatee, and not to the heirs or next of kin as intestate property.

**7. Charities ⬤⟼21(1)—Uncertainty of beneficiaries of bequest to "charity" does not invalidate it.**

Since a charity is a gift for the love of God or the love of your neighbor in the catholic or universal sense, free from considerations that are personal, private, or selfish, one of the distinguishing elements of a charitable trust is the indefiniteness permitted as to beneficiaries, so that a trust to be used for assisting deserving applicants for admission to a

---

⬤⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

home, who are unable to furnish the necessary money to meet the requirements for admission, is not invalid for indefiniteness of beneficiaries.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Charity.]

**8. Perpetuities ⊛⇒8(7)—Charitable bequest for special purpose is within statute exempting from perpetuities.**

Within Code of Law, § 1023, exempting gifts to charitable uses from the law against perpetuities, a bequest to a home for the aged is no less a gift to charitable use, because it is not to the home for its general use, but for the special purpose of aiding needy applicants, who are unable to furnish the money necessary for admission to the home.

**9. Perpetuities ⊛⇒8(1)—Rule not applicable to charitable gift, with no intervening gift.**

The rule against perpetuities does not apply to a gift to a charity, with no intervening gift to or for the benefit of a private person or corporation.

**10. Charities ⊛⇒43—Chancery can supervise trustees' selection of beneficiaries for chancery trust.**

A bequest to a home, to be used in aiding applicants for admission, who are unable to meet the financial requirements for admission to be determined by the managers, is a charitable use to be administered under the superintendence of a court of chancery, and such court would have power to deal with the refusal of the managers to select deserving applicants entitled to the benefit of the bequest.

**11. Wills ⊛⇒684(6)—Income not needed for designated purpose goes into residue.**

Where the whole income from a trust fund is not necessary to discharge the specific bequest to which it is applicable, and the balance is undisposed of under the will, such balance will go into the residue.

**12. Charities ⊛⇒21(3)—Inaccurate designation of home as beneficiary held sufficient.**

Where testatrix for several years before her death was one of the board of managers of the Presbyterian Home of the District of Columbia, which was authorized to take both men and women, but had never had more than one man, a bequest in the will to "the Presbyterian Home for Old Ladies supported by the Presbyterian Churches" was clearly intended to be for the benefit of the Presbyterian Home; that being the only home in the District supported by Presbyterian Churches.

**13. Wills ⊛⇒104—Courts are reluctant to avoid bequests for uncertainty.**

Courts are reluctant to hold a bequest void for uncertainty, and they only do so when actually compelled by the language used.

Appeal from the Supreme Court of the District of Columbia.

Bill by the Washington Loan & Trust Company, a corporation, as executor of the estate of Matilda J. Ramsey, deceased, and as trustee under the will of said decedent, against Ethel G. Blaine, formerly Ethel M. Garrigus, Harriet S. Ramsey, and others, for a construction of the will, and for instructions concerning the disposition of the property of the estate. From the final decree, the Trust Company and defendants Ethel G. Blaine, Harriet S. Ramsey, and another appeal. Decree modified and affirmed.

Julian W. Whiting, Arthur Peter, E. C. Brandenberg, and L. M. Denit, all of Washington, D. C., for appellants.

Julian W. Whiting, of Washington, D. C., for appellees.

⊛⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SMYTH, Chief Justice. The Washington Loan & Trust Company, as executor of the last will and testament of Miss Matilda J. Ramsey, and as trustee of her estate, filed its bill for a construction of the will and for instructions concerning the disposition of the property of the estate. It made all interested persons parties. The bill alleged that certain of the defendants charged that the will was void as a whole, or, if not, that stated parts were invalid, and that there were provisions with respect to which the Trust Company had doubts, and hence desired instructions. Some of the defendants answered; others defaulted. As to the latter a decree pro confesso was taken. From the final decree of the court the Trust Company and three of the defendants appealed. In this court the contestants are the Trust Company and Ethel G. Blaine, formerly Ethel M. Garrigus, upholding the will, and Harriet S. Ramsey and Eva M. Bowstead, who attack the will. For convenience we shall speak of the first-named parties as the Trust Company, and the last-named as the opposers. The points in dispute shall be considered in the order in which the opposers present them.

[1] The intention of the testatrix is the cardinal thing to be sought, and must be gathered from the whole will, and not from detached paragraphs or phrases. Rood on Wills, § 419 et seq. The fifth paragraph of the will is the first brought into question. It provides:

"I give, devise and bequeath to the aforesaid Ethel M. Garrigus during her life two-thirds of the net income derived from my estate by the said Trust Company, payable quarterly. In addition to the above I give, devise and bequeath to the said Ethel M. Garrigus all my household and personal belongings in my residence No. 1337 Q St., N. W., Washington, District of Columbia, and a box with the contents of said box to be marked with her name (Ethel M. Garrigus) in my safety deposit box, it being understood she will make such distribution of the aforesaid bequest to her as shall be made by me and left with my said attorney and executor, Franklin W. Brooks to be delivered to her which my said executor shall see my instructions and wishes fully observed and carried out by the aforesaid Ethel M. Garrigus."

[2] No instructions were found, and because of this the opposers say the last sentence of the paragraph is ineffective, and that the things described therein were not disposed of by it. This is not seriously denied by the Trust Company. Even if it were, it would have to be ruled that the sentence is without force. The instructions not having been produced, we do not know what Miss Ramsey's intention was touching the property referred to. Authorities bearing on the question are 1 Bigelow's Jarman, 98; Rood on Wills, § 250; Bryan's Appeal, 77 Conn. 240, 58 Atl. 748, 68 L. R. A. 353, 107 Am. St. Rep. 34, 1 Ann. Cas. 393; General Clergy Relief Fund v. Sharpe, 43 App. D. C. 126.

[3] But opposers go farther and contend that the failure to prove the instructions rendered the whole paragraph void. This is bottomed on the assumption that, according to the true meaning of the paragraph, the instructions relate, not only to the bequest mentioned in the last sentence, but also to that covered by the first sentence. The bequest of the first sentence has no condition attached to it in that sentence—it is for life. In the second sentence the bequest is not to the beneficiary absolutely as in the first, but to her to be distributed in accordance with instructions left by the testatrix with her attorney. It

is not likely that those instructions related to the gift made in the first sentence. Why should any instruction be given with respect to it, unless testatrix wished to change it, which is not probable. We are of opinion that the instructions, if any were left, did not deal at all with the bequest of the first sentence.

Besides, we are satisfied that the words "in addition," at the beginning of the second sentence, indicate that the bequest of the first is distinct from that of the second. The Century Dictionary defines the word "addition" as "the act or process of adding or uniting, especially so that the parts remain independent of one another." In a Vermont case the will gave to the testator's wife one-third of all his personal and real estate, "and in addition to that, * * * one cow, ten sheep, and one hundred dollars in money, to have at her disposal during her natural life." The court said:

"The words, 'and in addition to that,' introduced new and distinct matter, and the qualification in the last member of the paragraph is not to influence what has gone before, which is perfect and sensible in itself." Hart v. White, 26 Vt. 260, 269.

In the paragraph we are considering it is clear that there are two bequests, one made by the first sentence and one by the last. If the instructions related to both bequests, the plural word "bequests" would have been employed in the last sentence. But it is not. Instead, the instructions are made to relate to the "aforesaid bequest," meaning undoubtedly the bequest provided for in the last sentence.

[4] Opposers seek to draw some aid for their position from the ninth paragraph of the will, but without success. The language relied upon reads:

"Upon the death of Ethel M. Garrigus my bequest to her being for her life, the two third interest in the net profits of my estate so bequeathed her," etc.

This, by reciting the gift of two-thirds of the income to Ethel M. Garrigus, emphasizes, rather than cuts down, the gift, as urged by counsel. The Presbyterian Home was to receive "upon the death of Ethel M. Garrigus" two-thirds of the net income—not the two-thirds which had been given to her. Argument could not make this clearer.

[5] It is claimed that the testatrix had but a very slight acquaintance with Miss Garrigus, and little confidence in her, because she was not willing to trust her to dispose of what are said to be the unimportant things mentioned in the last sentence of the fifth paragraph, but charged her attorney with the duty of directing her in that regard, and from this opposers argue that there is no reason why the testatrix should give to her two-thirds of the income of the estate to the exclusion of persons said to be nearer to her. Undoubtedly the persons referred to as nearer the testatrix are Harriet S. Ramsey and Eva M. Bowstead, the appellants. But their right to be regarded either as heirs at law or next of kin of the testatrix is seriously disputed by the Trust Company. Putting aside for the moment the contention of the Trust Company in this respect, it is sufficient to say that the record discloses that Miss Garrigus and the testatrix were cousins, that the former visited the latter for six or eight weeks in the spring of 1914, some three months

before the will was made, that they corresponded frequently, and that the testatrix sent to Miss Garrigus birthday and Christmas presents. In the third paragraph of the will the testatrix intrusted to Miss Garrigus, in the event of the death of the former's attorney, the performance of a duty which she first imposed upon the attorney. The court, however, has no concern with the motives of the testatrix in this connection, since she has made clear in her will what her intentions were with regard to Miss Garrigus.

[6] We are not able, though, to agree with the court below that Miss Ramsey died intestate as to the things covered by the second sentence of the fifth paragraph. The fourth paragraph gives to the Washington Loan & Trust Company, as trustee, all the estate of the testatrix not "otherwise specially devised or bequeathed," to be distributed as directed in the will. The property covered by the last sentence was not "otherwise specially devised." Section 1631 of the Code says:

"If a devisee or legatee die before the testator, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed as the devisee or legatee would have done if he had survived the testator, unless a different disposition be made or required by the will. Unless a contrary intention appear by the will, such property as shall be comprised in any devise or bequest in such will which shall fail or be void or otherwise incapable of taking effect shall be deemed included in the residuary devise or bequest, if any, contained in such will."

No contrary intention appearing, it must be held that the property fell into the residue provided for in the fourth paragraph.

[7] The next contention is that the bequest made by the ninth paragraph to the Presbyterian Home is void because of uncertainty. A part of this paragraph has already been given. We now set out the whole:

"Upon the death of Ethel M. Garrigus my bequest to her being for her life, the two third interest in the net profits of my estate so bequeathed her with any amounts derived from that source or any other, shall in the absence of later specific bequests I may hereafter make, be paid to the said Presbyterian Home, in semi-annual payments, for the purpose of assisting deserving applicants who are unable to furnish the necessary money to meet the requirements for admission to the Home which shall be determined by the Board of Managers acting for the different churches in Washington aforesaid, supporting said Home and for no other purpose whatsoever."

The Home is made the trustee to use the fund for "assisting deserving applicants who are unable to furnish the necessary money to meet the requirements for admission to the Home." The board of managers of the Home are to determine who are deserving applicants. These applicants are the beneficiaries, and are uncertain. Because of the uncertainty it is argued the trust is void. The trust is a charitable one. With approval the Supreme Court of the United States quoted the following definition of a charity:

"Whatever is given for the love of God, or for the love of your neighbor, in the catholic or universal sense—given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish." Ould v. Washington Hospital, etc., 95 U. S. 303, 311 (24 L. Ed. 450).

One of the essentials of such a trust is indefiniteness as to the beneficiaries. "If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery." Russell v. Allen, 107 U. S. 163, 167, 2 Sup. Ct. 327, 330 (27 L. Ed. 397). This court quoted with approval from Mr. Pomeroy (2 Pom. Eq. Jur. § 1025) the following:

"One of the distinguishing elements of a 'charitable' as compared with an ordinary trust consists in the generality, indefiniteness, and even uncertainty which is permitted in describing the objects and purposes of the beneficiaries." Columbia University v. Taylor, 25 App. D. C. 124, 131.

This case was affirmed on appeal in 226 U. S. 127, 33 Sup. Ct. 73, 57 L. Ed. 152. Other cases supporting the doctrine are St. James Orphan Asylum v. Shelby, 60 Neb. 796, 84 N. W. 273, 83 Am. St. Rep. 553; Beach on Trusts and Trustees, § 322; Speer v. Colbert, 200 U. S. 130, 26 Sup. Ct. 201, 50 L. Ed. 403.

The courts of Massachusetts, Maryland, West Virginia, and other states apply the same test of definiteness to charitable as to private trusts, but they are not in harmony with the great weight of authority, and certainly not with the holding of the Supreme Court of the United States and this court. The question here involved was not decided in Dinwiddie v. Metzger, 45 App. D. C. 310, for it was conceded by the parties in that case that the charitable trust which the will attempted to create could not be carried into effect. True, in the earlier days, long before this court was established, the Maryland rule prevailed here. Barnes v. Barnes, 3 Cranch, C. C. 269, Fed. Cas. No. 1,014; Coltman v. Moore, 1 MacArthur (8 App. D. C.) 197. That is not so now.

[8] According to our Code (section 1023) gifts to charitable uses do not come within the purview of the law against perpetuities. But counsel suggest that since the bequest is not to the Home for its general use, but for a special one, it is not protected by the Code provision and is void. We are unable to perceive the reason for this. The gift is to an institution for the benefit of needy persons, and comes fully within the definition of a charitable use. The circumstance that it is not for the general use of the Home is immaterial—it is for a charitable use and that is enough.

[9] The rule against perpetuities "does not apply to a gift to a charity, with no intervening gift to or for the benefit of a private person or corporation." Hopkins v. Grimshaw, 165 U. S. 342, 355, 17 Sup. Ct. 401, 406 (41 L. Ed. 739), and cases there cited. There is no intervening gift of that character here. Title to the bequest vests upon the death of Miss Garrigus. This of itself saves it from the operation of the rule against perpetuities. Rood on Wills, § 610, and cases cited in footnotes. The only case cited on the question by the opposers is Matter of Will of O'Hara, 95 N. Y. 403, 47 Am. Rep. 53. It is not in point. There the bequest was to three individuals who were to administer the estate under instructions not embodied in the will. The court held that the instructions tied up the property for three lives and an uncertain period beyond, and thereby violated the rule against perpetuities. There is no feature of that character in the will before

us. The court also ruled that the trust was void because the beneficiaries were uncertain. According to the law of New York, definiteness is one of the essential characteristics in a valid charitable trust. Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; Levy v. Levy, 33 N. Y. 97. Such is not the law of this jurisdiction, as we have shown.

[10] Nor is there anything in Dinwiddie v. Metzger, supra, which supports the position taken by the opposers, to the effect that if the Home should refuse to select the deserving applicants there is no power in chancery to deal with the matter. The trust in that case was not a charitable one. When the founder of a charitable use describes the general nature of the trust, "he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery." Russell v. Allen, supra, 107 U. S. 167, 2 Sup. Ct. 330, 27 L. Ed. 397. If a trustee refuses to perform his duty, a court of chancery has the power to remove him and substitute another. Cavender v. Cavender, 114 U. S. 464, 5 Sup. Ct. 955, 29 L. Ed. 212; May v. May, 167 U. S. 310, 17 Sup. Ct. 824, 42 L. Ed. 179.

[11] Opposers say that the entire amount of the one-third of the income not given to Miss Garrigus will not be necessary to discharge the specific bequest to which it is applicable, and that whatever is left is undisposed of under the will. If there be any left, it will go into the residue under paragraph 4, and should be invested and disposed of as provided in the fifth finding of the decree.

[12] The beneficiary under the eighth and ninth paragraphs is described as the "Presbyterian Home for Old Ladies, supported by the Presbyterian churches of Washington, D. C." According to the proof, there is but one Presbyterian Home in the District and it is called "the Presbyterian Home of the District of Columbia." It is said that the last-named Home is not the designated beneficiary, and, as there is no other Presbyterian Home in the District, the bequest is void. The testatrix was one of the board of managers of the last-named Home from 1908 until she died, with the exception of one year, and was also a member of the Washington Heights Presbyterian Church. Her will was made, as we have heretofore stated, in August, 1914. In that year she attended seven meetings of the Board. The Home is authorized to take both men and women, but it never harbored more than one old man, and at the time a witness testified it was caring for 18 old ladies. In 1914 there were probably 14 or 15 there. Under these circumstances it is not unnatural that the testatrix should speak of the establishment as the Presbyterian Home for Old Ladies. We think the institution which she had in mind is the Presbyterian Home of the District of Columbia, and that it is entitled to take the bequest, notwithstanding the fact that she did not designate it by its proper name. A gift to the "Institution for the Relief of the Ruptured and Crippled in the City of New York" was held to sufficiently designate "the New York Society for the Relief of the Ruptured and Crippled." Weed v. Scofield, 73 Conn. 670, 49 Atl. 22. A gift to the "Board of Managers of the Foreign Missionary Society of the Methodist Episcopal Church" was held sufficient to entitle the "Wo-

man's Foreign Missionary Society" of that church to the gift, it being the only society engaged in that work. Woman's Foreign Missionary Society v. Mitchell, 93 Md. 199, 48 Atl. 737, 53 L. R. A. 711. This court held in Colbert v. Speer, 24 App. D. C. 187, that a bequest to "Georgetown University," there being no institution bearing that name, sufficiently indicated "the President and Directors of Georgetown College," and that a bequest to "St. Joseph's Catholic Orphan Asylum" was valid as a gift to "the Trustees of St. Joseph's Male Orphan Asylum." This case was affirmed by the Supreme Court of the United States in 200 U. S. 130, 26 Sup. Ct. 201, 50 L. Ed. 403.

[13] Objections to other parts of the will, which make small bequests, are urged on the ground of uncertainty. We have considered them, but find they are devoid of merit. It is a well-established rule of law that courts are reluctant to hold a bequest void for uncertainty, and they only do so when actually compelled to by the language used. Inglis v. Trustees, 3 Pet. 99, 7 L. Ed. 617. No such compulsion exists in this case.

The right of the appellants Ramsey and Bowstead to contest the will is challenged, but, since we rule against all their contentions, it is not necessary to pass upon their right.

The decree must be, and it is, modified as heretofore indicated, with respect to the things covered by the last sentence of paragraph 5, and, as so modified, is affirmed; costs to be assessed against the appellants Harriet S. Ramsey and Eva M. Bowstead.

Modified and affirmed.